SARAH JEWETT MARSH and JULIA GILES, Plaintiffs, *v.* MARGUERITE S. ADAMS and Others, Defendants.

Supreme Court, Special Term, New York County, May 23, 1939.

*Appleton, Rice & Perrin* [*Gerhard R. Gerhard* of counsel], for the plaintiffs.

*Dwight, Harris, Koegel & Caskey* [*Frederick W. P. Lorenzen* of counsel], for the defendants Raymond C. Kramer, Max S. Korn, Harriet K. Welles, Bella R. Beer, Rosalie James, James A. Cole, Eleanore S. Cole, Inc., and Rosalind S. Couvert.

*Mitchel, Taylor, Capron & Marsh* [*George Mittendorf* of counsel], for the defendant City Bank Farmers Trust Company.

*White & Case* [*James A. Murphy* of counsel], for the defendant Alice Davison Gates.

*Austrian & Lance* [*Samuel Rudner* of counsel], for the defendant Helen Steifel.

HOFSTADTER, J. The plaintiffs (the original plaintiff having died since the institution of the action) seek a declaratory judgment decreeing that certain restrictive covenants do not prohibit the use of their property (located at 33 East Seventy-fourth street) for a private school not operated for profit. The only issue tendered by the submission is the proper construction of the covenants; it is conceded that they are valid and enforcible and that there has been no alteration in the character of the neighborhood.

The restriction in question, after reciting the names of the parties and the properties to be affected, contains the following mutual covenant and agreement: " that neither they, nor their said heirs, executors, administrators or assigns will build upon or use any of the lots or property hereinabove described as respectively owned by them for any private or livery stable, railroad depot, slaughter house, tallow chandlery, smith shop, forge, furnace, nail or other iron foundry, or any manufactory for the making of glass, glue, varnish, vitriol, turpentine or oil, or for tanning, dressing or keeping of skins, or hides or leather, or any theatre, opera house, brewery, distillery, molasses or sugar refinery, lager beer or concert saloon,

or any mode or sort of business whatever, nor any apartment house, flats or tenement house, hotel, hospital or asylum."

The court has found no case in this jurisdiction which construes a similar covenant. The construction of the meaning of a restrictive covenant is necessarily based upon its obvious intendment and the particular language employed. While the courts do not favor such a covenant and it is well settled that it must be literally and strictly construed against the party seeking to enforce it (*Buffalo Academy of Sacred Heart* v. *Boehm Bros.*, 267 N. Y. 242, 249), the court may not nullify the entire purpose of the covenant and the clearly expressed intent of the parties by resorting to a strained and unreasonable construction of the meaning of its terms to accomplish a desired result. (*Baumert* v. *Malkin*, 235 N. Y. 115.)

The doctrine of *noscitur a sociis*, strenuously urged by plaintiffs, has no application to the situation here presented. A covenant which specifically enumerates a long list of noxious or offensive trades before the general interdiction of all businesses may evidence an intention to limit the general prohibition to *other* businesses of the same nature and offensive to the same degree as those specifically named. (See *Smith* v. *Scoville*, 205 App. Div. 112; *Moubray* v. *G. & M. Improvement Co.*, 178 id. 737.)

But the canon of construction embodied in the expressions *ejusdem generis* and *noscitur a sociis* is utilized by the court only to ascertain the intention of the parties, and accordingly it may be resorted to only where there is an ambiguity in the instrument which obscures the true intention. Language must be given its usual and ordinary meaning, and I am clear from both the spirit and the letter of the covenant that the original parties intended exactly what they provided, namely, to prohibit the use of the lands affected for " any mode or sort of business whatever."

This conclusion is compelling from the last clause of the covenant. Essentially, a school is in no different category than an " apartment house, hotel, hospital or asylum." These latter types of prohibited businesses are not considered noxious, dangerous or offensive at law. The framers, therefore, did not limit themselves to undesirable enterprises and their obvious purpose was to prevent *any* business which would tend to destroy the residential character of the neighborhood by causing congestion and the gathering of crowds with the resultant annoyances. The presence of a school is calculated to produce the same result, sought to be avoided to the detriment of adjoining property owners.

Indeed, to carry the premise of the plaintiffs to its logical end (excluding zoning laws, which certainly were not in the contempla-

tion of the parties), the property might also be used properly for any number of commercial purposes not embraced within the definition of noxious and offensive businesses and not specifically forbidden by the final clause of the covenant. Thus the street would be thrown open to retail stores (*Moubray* v. *G. & M. Improvement Co.*, *supra*), boarding houses (*Smith* v. *Scoville*, *supra; Mischlich* v. *Lubin*, 182 App. Div. 703; *Gallon* v. *Hussar*, 172 id. 393); offices of physicians and lawyers (*Schnibbe* v. *Glenz*, 245 N. Y. 388); dressmakers (*Clark* v. *Jammes*, 87 Hun, 215). This list does not purport to be exhaustive but it is apparent from these few examples that if the views of the plaintiffs are adopted by the court, the restrictive covenant would be entirely vitiated and the present character of the neighborhood changed.

A school, whether it is organized and operated for profit or not, is a " business " within the meaning and intendment of the covenant here construed. (*Hart* v. *Little*, 103 Misc. 620; *Doe* v. *Keeling*, 1 Maule & S. 95.) The case of *Sweet* v. *Holleran* (142 Misc. 408) is distinguishable on its facts. Obviously, a school is not a " manu‑ facturing or mercantile business."

While it is academic in view of the disposition on the merits, the court expresses the opinion that a proper case for a declaratory judgment is presented by the record.

The objection of the plaintiffs to the testimony of the witness Korn is sustained and the offending questions and answers are stricken. (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Kitching* v. *Brown*, 180 id. 414, 420.) The plaintiffs' objection to defendants' Exhibits A and B is overruled. The defendants' objection to plaintiffs' Exhibit 8 is sustained and the remaining objections overruled. Each party may have an appropriate exception.

Judgment for the defendants.