[1 NYS3d 731]

Peter Jasinski et al., Plaintiffs/Petitioners, v Hudson Pointe Homeowners Association, Inc., et al., Defendants/Respondents.

Supreme Court, Warren County, August 26, 2013

**APPEARANCES OF COUNSEL**

*Miller, Mannix, Schachner & Hafner, LLC*, Glens Falls (*Leah Everhart* of counsel), for plaintiffs/petitioners.

*Bond, Schoeneck & King, PLLC*, Albany (*Arthur J. Siegel* of counsel), for defendants/respondents.

## OPINION OF THE COURT

ROBERT J. MULLER, J.

Plaintiff/petitioner Peter Jasinski and his wife, plaintiff/petitioner Margaret Jasinski (hereinafter referred to collectively as plaintiffs), own lot 89 in the Hudson Pointe Planned Unit Development in the Town of Queensbury, Warren County, which lot is subject to the "Declaration of Protective Covenants, Conditions, Restrictions, Easements, Charges and Liens" (hereinafter Declaration) of defendant/respondent Hudson Pointe Homeowners Association, Inc. (hereinafter the Association). Section 9.04 (a) of the Declaration states as follows:

> "ADVERTISING AND SIGNS:
>
> "Except for signs erected by or with the permission of the Co-Sponsors in connection with the initial marketing of Homes, no additional sign or other advertising device of any nature shall be placed for display to the public view on any Home, in any window of any Home, on any lot or other portion of the Property (including temporary signs advertising Homes for sale or rent by Owners, lessees or realtors) except with the consent of the Board of Directors."

According to plaintiffs, beginning in 2004, they displayed a single political sign during each election season. In 2008, the Hudson Pointe Homeowners Association Board (hereinafter the Board) advised plaintiffs that the sign constituted a violation of section 9.04 (a) of the Declaration. Plaintiffs continued with their sign placement during election season and, by correspondence dated May 19, 2010, they were advised that "[t]he Board[,] in an attempt to stop the political signs that appear during election season[,] [has] established a five (5) dollar a day sanction for any homeowner who refuses to take down a sign once they receive notification." Then, when plaintiffs again displayed a political sign in October 2010, the Board enforced the $5 per day fine against them. After initial attempts to collect this fine, the Board ultimately abandoned its efforts in April 2011, advising plaintiffs as follows: "At this time [the Board] has decided that it would be in everyone's best interests to not pursue any action against [plaintiffs] at this time. This

does not in any way constitute relinquishment of their rights." Plaintiffs were further provided with an invoice demonstrating that the fines had been forgiven.

Plaintiffs again displayed a political sign during the 2011 election season and, by correspondence dated November 10, 2011, the Board advised them as follows:

> "[T]he Board . . . has determined you to be in violation of [section] 9.04 (a) of the [Declaration] applicable to this [A]ssociation. The [B]oard is writing to you with the hope that you will voluntarily come into compliance with the rules of the [A]ssociation. Failure to so comply by November 15, 2011[ ] will lead to a levy of a fee against you of $5.00 per day for violating the rules and regulations of the [A]ssociation and the placement of a lien against your property."

Plaintiffs continued to display the political sign and a fine of $805 was imposed. Then, when plaintiffs failed to pay the fine, the Board filed a lien against their property on July 25, 2012 in the amount of $1,070, which lien includes the fine as well as $250 in attorney's fees and $15 in costs. On September 17, 2012, plaintiffs commenced this combined proceeding pursuant to CPLR article 78 and action for a declaratory judgment against the Board, as well as its president, defendant/respondent Charles "Chuck" Moore, and its individual members, defendants/respondents John Kessler, Sandra Barlow, Dawn Thompson, and Fred Lefton (hereinafter collectively referred to as defendants). Plaintiffs seek (1) a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because it has misinterpreted section 9.04 (a) of the Declaration and, further, that the land upon which the signs were displayed belongs to the Town of Queensbury (hereinafter the Town); (2) a declaratory judgment that the Board may not lawfully enforce its political sign ban; (3) a judgment pursuant to CPLR article 78 that the Board acted arbitrarily, capriciously and abused its discretion by filing a lien against plaintiffs' property; (4) an award of punitive damages for violating plaintiffs' right to free speech under the US Constitution; and (5) a permanent injunction prohibiting the Board from "assessing any sums against [plaintiffs] for violation of the . . . unlawful political sign ban." Issue has been joined with defendants asserting a counterclaim for attorney's fees. Presently before the court is (1) plaintiffs' motion

for partial summary judgment on the first, second, third and fifth causes of action; and (2) defendants' cross motion for summary judgment dismissing the complaint/petition and, further, granting the counterclaim. The motion and cross motion will be considered simultaneously, with each cause of action addressed in seriatim.

With respect to that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because it has misinterpreted section 9.04 (a) of the Declaration, plaintiffs contend that this section does not apply to political signs. Rather, according to plaintiffs, this section applies only to signs used as advertising devices. Plaintiffs therefore contend that they are entitled to summary judgment as a matter of law. Defendants, on the other hand, contend that this section applies to all signs regardless of purpose. Defendants therefore contend that the Board was entitled to rely upon it in banning the display of political signs and, further, that they are entitled to summary judgment as a matter of law.

Restrictive covenants "must be construed as they read and not be given a construction extending beyond the literal meaning of their terms" (*Ford v Rifenburg*, 94 AD3d 1285, 1287 [2012], quoting *Buffalo Academy of Sacred Heart v Boehm Bros.*, 267 NY 242, 249 [1935]). Further, "the law favors 'free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them'" (*Van Schaick v Trustees of Union Coll.*, 285 AD2d 859, 860 [2001], *lv denied* 97 NY2d 607 [2001], quoting *Witter v Taggart*, 78 NY2d 234, 237 [1991]; *accord Dever v DeVito*, 84 AD3d 1539, 1542 [2011], *lv dismissed* 18 NY3d 864 [2012]). It must also be noted that "public policy favors the free and unobstructed use of property where the restrictive covenant is ambiguous" (*Freedman v Kittle*, 262 AD2d 909, 911 [1999]; *see Gitlen v Gallup*, 241 AD2d 856, 858 [1997]).

The court finds that the language of section 9.04 (a) of the Declaration "is 'susceptible of more than one interpretation'" (*Gitlen v Gallup*, 241 AD2d at 858, quoting *Schweitzer v Heppner*, 212 AD2d 835, 838 [1995]). Specifically, as suggested by plaintiffs, "no additional sign or other advertising device" can be interpreted to mean only signs used as advertising devices. With that said, it can also be interpreted to mean any signs whatsoever, as suggested by defendants. This court recognizes a distinction between commercial advertisers who seek

to generate increased consumption of their products and noncommercial advertisers who seek to advocate an idea. The existence of these two mutually exclusive possibilities is clear evidence of the ambiguity.

"[S]ummary judgment is not limited to [those cases] where the contract is free from ambiguity and not subject to differing interpretations" (*Gitlen v Gallup*, 241 AD2d at 858, quoting *Maio v Gardino*, 184 AD2d 872, 873 [1992]). "If there is ambiguity in the terminology [used,] and the equivocality can be resolved without reference to extrinsic evidence, the issue is [to be determined as] a question of law for the court" (*Gitlen v Gallup*, 241 AD2d at 858, quoting *Maio v Gardino*, 184 AD2d at 873-874). In reviewing the scope of section 9.04 (a) of the Declaration, the court is constrained to an interpretation which would be the least restrictive since restrictive covenants of this kind are contrary to a general public policy promoting the free and unobstructed use of real property (*see Freedman v Kittle*, 262 AD2d at 911; *Gitlen v Gallup*, 241 AD2d at 858). The court therefore grants plaintiffs' motion for partial summary judgment with respect to that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because it has misinterpreted section 9.04 (a) of the Declaration. The court further denies defendants' cross motion for summary judgment with respect to this aspect of the first cause of action.

With respect to that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because the land upon which the signs were displayed belongs to the Town, plaintiffs contend that the Town owns a strip of land approximately 12 feet wide on either side of Hudson Pointe Boulevard, the road upon which their home is located. Plaintiffs further contend that their political signs are consistently placed on the portion of land belonging to the Town and, consequently, the Board is without authority to prohibit them. Defendants in fact do not dispute that the signs are placed on land belonging to the Town. Specifically, defendants concede that Hudson Pointe Boulevard was conveyed by Hudson Pointe, Inc. to the Town by deed recorded on February 28, 1997. Defendants, however, contend that this conveyance was subject to "the appurtenances and all the estate and rights of the party of the first part in and to said premises." The Declaration was re-

corded on October 20, 1995 and the "Supplemental Declaration of Protective Covenants, Conditions, Restrictions, Easements, Charges and Liens"—which retains the same language relative to sign restrictions—was thereafter recorded on November 27, 1996. According to defendants, because both the Declaration and Supplemental Declaration were recorded before the deed to the Town, conveyance of the road was subject to all of the restrictions contained therein. Defendants further point out that—from a practical standpoint—"[i]f a homeowner's association transferred the land for its roads to a municipality *not* subject to the homeowner's rules concerning signage, use of driveways, mowing and other regulations, homeowners expecting these protections would be severely prejudiced."

■ "Real Property Law § 240 (3) declares that every instrument creating or transferring an estate in real property must be construed in accordance with the parties' intent, which is to be gathered from the instrument as a whole and must be consistent with the rules of law" (*Andersen v Mazza*, 258 AD2d 726, 727 [1999]; *see Iulucci v James H. Maloy, Inc.*, 199 AD2d 720, 721 [1993]). Here, in view of the language of the deed by which Hudson Pointe Boulevard was conveyed to the Town— together with the parties' obvious intent to transfer the road subject to the provisions of both the Declaration and Supplemental Declaration—the court finds that the Board does have authority to ban plaintiffs from displaying signs on the strip of land approximately 12 feet wide on either side of Hudson Pointe Boulevard, notwithstanding that this strip is in fact owned by the Town. The court therefore denies plaintiffs' motion for partial summary judgment with respect to that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because the land upon which the signs were displayed belongs to the Town. The court further grants defendants' cross motion to dismiss this aspect of the first cause of action.

■ Turning now to the second cause of action seeking a declaratory judgment that the Board may not lawfully enforce its political sign ban, the court finds that, insofar as section 9.04 (a) of the Declaration does not apply to political signs, the Board may not lawfully enforce its political sign ban. Plaintiffs' motion for partial summary judgment is therefore granted relative to the second cause of action and, further, defendants' cross motion is denied.

With respect to the third cause of action seeking a judgment pursuant to CPLR article 78 that the Board acted arbitrarily, capriciously and abused its discretion by filing a lien against plaintiffs' property, again—insofar as section 9.04 (a) of the Declaration does not apply to political signs—the court finds that the Board erred in filing a lien against plaintiffs' property. The court therefore grants plaintiffs' motion for partial summary judgment relative to the third cause of action and, further, denies defendants' cross motion.

Turning now to the fourth cause of action seeking an award of punitive damages for violating plaintiffs' right to free speech under the US Constitution, defendants contend that the Board—as a private entity—cannot violate plaintiffs' constitutional right to free speech. Plaintiffs, on the other hand, contend that the Board has "stood in the shoes of" the government by endeavoring to regulate publically-owned lands.

"[T]he constitutional guarantee of free speech protects against governmental infringement and, thus, restrictions regarding expression on private property . . . do not typically implicate the constitutional right to free speech" (*Downs v Town of Guilderland*, 70 AD3d 1228, 1230 [2010]; *see Lloyd Corp. v Tanner*, 407 US 551, 569-570 [1972]; *SHAD Alliance v Smith Haven Mall*, 66 NY2d 496, 502 [1985]).

> "Thus, a person asserting a constitutional violation arising from a restriction on speech that occurred on private property must show that the state was significantly involved and [t]he factors to be considered in determining whether [state action] has been shown include: the source of authority for the private action; whether the [s]tate is so entwined with the regulation of the private conduct as to constitute [s]tate activity; whether there is meaningful [s]tate participation in the activity; and whether there has been a delegation of what has traditionally been a [s]tate function to a private person" (*Downs v Town of Guilderland*, 70 AD3d at 1230 [citation and internal quotation marks omitted]).

"As the test is not simply State involvement, but rather significant State involvement, satisfaction of one of these criteria may not necessarily be determinative to a finding of State action" (*Sharrock v Dell Buick-Cadillac*, 45 NY2d 152, 158 [1978]).

Taking each of these criteria in turn, the source of authority—or alleged source of authority—for the private action is

the Declaration. It does not appear that the Town is so entwined with the Board's regulation of political signs within the Association that such regulation constitutes town activity. It further does not appear that there is meaningful participation by the Town in the Board's regulation of political signs. With that said, insofar as the Board admittedly regulates land belonging to the Town, the court finds that plaintiffs have succeeded in raising a question of fact as to whether there has been a delegation to the Board of what has traditionally been a town function (*see Melara v Kennedy*, 541 F2d 802, 807-808 [9th Cir 1976]). The court therefore denies that aspect of defendants' cross motion for summary judgment seeking to dismiss the fourth cause of action.

Finally, with respect to the fifth cause of action seeking a permanent injunction prohibiting the Board from assessing any future sums against plaintiffs for violation of the unlawful political sign ban, insofar as section 9.04 (a) of the Declaration—as it currently reads—does not apply to political signs, the court finds that plaintiffs are entitled to the permanent injunction.[*] The court therefore grants plaintiffs' motion for partial summary judgment relative to the fifth cause of action and, further, denies defendants' cross motion.

■ Insofar as defendants' cross motion for summary judgment granting its counterclaim is concerned, section 10.08 of the Declaration provides as follows: "Any party to a proceeding who succeeds in enforcing a [c]ovenant, [c]ondition or [r]estriction or enjoining the violation of a [c]ovenant, [c]ondition or [r]estriction against an [o]wner . . . , shall be entitled to reasonable attorney's fees against such [o]wner."

Here, insofar as section 9.04 (a) of the Declaration does not apply to political signs, defendants have not succeeded in enforcing a covenant, condition or restriction. This aspect of the cross motion is therefore denied. The court further exercises its discretion to search the record and finds that plaintiffs are entitled to summary judgment dismissing the counterclaim (*see* CPLR 3212 [b]; *Miranda v Norstar Bldg. Corp.*, 79 AD3d 42, 49 n 3 [2010]; *Dickson v Slezak*, 73 AD3d 1249, 1250 n 3 [2010]).

---

[*] It should be noted that this injunction is limited to the Board's authority as conferred by section 9.04 (a) of the Declaration. In other words, if the Board amends section 9.04 (a) of the Declaration so as to expressly prohibit the posting of political signs, then the permanent injunction would no longer apply.

Based upon the foregoing, plaintiffs' motion for partial summary judgment is granted to the extent that they are entitled to summary judgment on that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban them from displaying political signs because it has misinterpreted section 9.04 (a) of the Declaration, as well as on the second, third and fifth causes of action, and the motion is otherwise denied. Defendants' cross motion for summary judgment is granted to the extent that they are entitled to summary judgment dismissing that aspect of the first cause of action seeking a declaratory judgment that the Board is without authority to ban plaintiffs from displaying political signs because the land upon which the signs are displayed belongs to the Town, and the cross motion is otherwise denied. Plaintiffs are further granted summary judgment dismissing defendants' counterclaim.