MIAMI CONSERVANCY DISTRICT, APPELLEE, *v.* ELLEMAN ET AL., APPELLANTS.

[Cite as Miami Conservancy District v. Elleman (1976), 50 Ohio App. 2d 357.]

(No. 76 CA 4—Decided December 8, 1976.)

*Messrs. Brumbaugh, Corwin & McDonnell* and *Mr. Alan J. Braun,* for appellee.

*Mr. Charles J. Simpson,* for appellants.

McBRIDE, J. This action was initiated by the Miami Conservancy District against the defendants to enforce deed restrictions prohibiting structures in the flood plain area behind the Englewood Dam below the level of the top of the spillway. The defendants, appellants herein, entered denials and asserted waiver and estoppel in their answer.

The trial court on January 12, 1976, issued an order

sustaining the restrictions and ordering the removal of mobile homes and trailers from the Stillwater flood plain basin except during that part of the year when such housing is permitted by the Conservancy District under its policy for recreational use of the land during May through September when high water is unlikely.

Defendants present four assignments of error.

At this point in time it is unnecessary to review the history, purpose and nature of the public authority known as the Miami Conservancy District. The full story is a matter of common knowledge and may be judicially recognized.

Several facts are essential to outline the questions in this case. Mobile home trailers were moved into a location behind the Englewood Dam and services and utilities were connected to them in an area within and below the flood plain level as described in restrictions in the deeds to properties under the control of the Miami Conservancy District. The District permits such trailers seasonally for recreational purposes, but requires their removal during the winter and spring when the possibility exists that water from the retaining dams may rise to the flood level created by the height of the spillway. The restriction in the deed was designed to prohibit human habitation during the period when high water may be anticipated and a danger exists not only to the occupants but to the security of the dam and the inhabitants below. The District acquired the right to control land in the flood plain area by either appropriation or agreement and resold land subject to express restrictions and reservations.

The restrictions, in this instance, appear in a deed dated March 1, 1920, which provides for the right to back the waters of the Stillwater upon the land to a height of 876 feet above sea level, to remove structures below 866 feet above sea level and to enter the premises, destroy drift, police the premises and the like. The grantees and their assigns agreed that no structures would be erected below the required level except with written permission "first had" and then at the owner's risk. The deed recommended

that existing homesteads on the premises be developed, as necessary by reason of depreciation or otherwise, at a higher elevation to avoid back water. The deed recites that all restrictions and limitations "are and shall be covenants running with the land."

## I.

The first assignment claims error by the trial court in holding that equitable estoppel did not apply where the plaintiff sought to enforce a restriction on structures where the plaintiff had permitted violations of the restrictions.

At the outset, it should be pointed out that the extent of the alleged violations was a disputed factual issue for the trial court. While they appear to be minimal, this court may not apply its judgment on the weight of the evidence. Secondly, the appellants' arguments relate to private restrictions of private parties and have no application to a public instrumentality which has provided the vital governmental function of protection of an entire river basin from the dangers of flood waters. Relying upon the governmental function as well as R. C. 6101.24, which specifically provides that the rights of the district shall not be lost by prescription or adverse possession, the trial court properly refused to apply an estoppel or waiver theory and well stated the reasons for the denial.

If it were possible to acquire private rights to permanent residential habitation in the flood plain of the dams by way of progressive encroachment, the natural and human tendency to expand a temporary campsite into a permanent homesite could reduce or destroy the purpose and benefit of the conservancy flood law. One good flood could wash a community of homes and structures against the retaining walls and wash out the cities below.

There is no merit in this assignment or to the three factual branches set forth.

## II.

The second assignment claims error in the court's holding that the 21 year statute of limitations did not bar the plaintiffs action as to recreational vehicles. There is no merit to this assignment.

The reasons have been stated in discussing the first assignment; however, in addition, the factual basis as to the appellants never reaches the length of time relied upon and the instant action is not one to recover possession of real estate.

## III.

The third assignment is that the court erred in holding that mobile home trailers were structures within the meaning of the deed restriction.

The semantics over the use of the word structure in the context of the reservations in the instruments under the conservancy act is an unnecessary and fruitless exercise. There may be problems in zoning and taxation as to when a home on wheels ceases to be on wheels and becomes a fixture; however, the facts and circumstances here permit only one generic definition. As if to help in this case, the legislature adopted the identical terminology in H. B. 511 in the criminal code when it accepted the word structure as a generic term and classified structures for criminal cases as occupied or unoccupied. R. C. 2911.11. In H. B. 511, a structure includes a temporary one, even a pup tent, if erected.

The language of the restriction in the deed prohibits the erection of all structures, except where permission is first obtained in writing. Structure here means the setting up or putting into an upright position anything that rests upon or in the ground. There is in this case no facts or circumstances that suggests that a fixture rather than a structure was intended by the parties in the deed.

There is no merit to this assignment.

## IV.

The fourth and final assignment alleges that error was committed by the court when it found that the restrictive covenant in the deed to George Harpner ran with the land.

Appellant argues that personal covenants do not run with the land and that there must be a benefit. This flies in the face of the agreement which relates to all structures on the land and involves a public activity that may flood all the land involved above the dam. This is a permanent

detriment to the owner and a permanent benefit to the district and to the public, all agreed upon for a valuable consideration. It is also apparent that the restriction applies uniformly to all lands in the flood plain. Further, the first rule of construction is the intention of the parties and when that intention is expressed in the instrument and agreed upon, the expressed intent controls. There is no merit to this assignment.

*Judgment affirmed.*

KERNS, P. J., and SHERER, J., concur.