■ STEPHEN DOWNS, Appellant, v TOWN OF GUILDERLAND et al., Respondents. [897 NYS2d 264]—

---

Lahtinen, J. Appeal from an order of the Supreme Court (Connolly, J.), entered April 6, 2009 in Albany County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

Plaintiff contends that his right to free speech under NY Constitution, article I, § 8 was violated and he was subjected to a false arrest while at Crossgates Mall in the Town of Guilderland, Albany County. The mall is owned by defendant Pyramid Crossgates Company and operated by defendant Pyramid Management Group, Inc. In early March 2003, when the invasion of Iraq was looming, plaintiff and his adult son had customized T-shirts made at a store in the mall. Plaintiff's T-shirt stated "Peace on Earth" on the front and "Give Peace a Chance" on the back, while his son's read "No War With Iraq" and "Let Inspections Work." The two men left their jackets in the store where they had purchased the T-shirts, they put on the T-shirts over their clothing and proceeded to walk together throughout the mall.

Shortly thereafter, the mall security office received reports of disturbances between customers and two men wearing "anti-war T-shirts." Two mall security guards responded to the report. One mall security guard, Robert Williams, testified that he observed a commotion involving plaintiff (and his son) and other mall customers. According to Williams, he intervened and, in light of the disturbances, he asked plaintiff and his son to either remove their T-shirts or leave the mall. They refused to do either. The two mall security guards observed a Town of Guilderland police officer, defendant Adam Myers, who was in the mall on an unrelated police matter, and they asked Myers for assistance. Myers testified at his deposition that while at the scene, he observed a potential disturbance involving a mall customer and plaintiff and his son. Although plaintiff's son removed his T-shirt, plaintiff continued to refuse to remove his T-shirt or leave the mall. Myers contacted his superior officer, who, after consultation with the Town Attorney, instructed Myers that if plaintiff continued to refuse the mall's directive and the mall wanted to press charges, plaintiff could be arrested for trespass. Informed of such facts, plaintiff nevertheless continued his

refusal to leave or remove his T-shirt. He was arrested for trespass. The charge was later dropped.

Plaintiff commenced this action against defendant Town of Guilderland and Myers (hereinafter collectively referred to as the Town defendants) and Pyramid Management Group, Inc. and Pyramid Crossgates Company (hereinafter collectively referred to as the Pyramid defendants) alleging causes of action for false arrest, equal protection violation, free speech violation, denial of right to travel, and civil banishment. Relief demanded included, among other things, monetary damages and judgment declaring the mall a public forum for purposes of free speech. Following disclosure, the Pyramid defendants and the Town defendants each moved for summary judgment dismissing the complaint. Plaintiff cross-moved for summary judgment on all his causes of action. Supreme Court granted defendants' motions. On appeal, plaintiff has narrowed his arguments to whether his right to free speech was violated and whether his arrest for trespass was a false arrest.

We consider plaintiff's free speech argument first. The right to free speech is a "cherished civil libert[y]" (*SHAD Alliance v Smith Haven Mall*, 66 NY2d 496, 498 [1985]) and discussing governmental affairs is at the core of that right (*see Matter of Parkhouse v Stringer*, 12 NY3d 660, 666 [2009]). However, the constitutional guarantee of free speech protects against governmental infringement and, thus, restrictions regarding expression on private property, including malls, do not typically implicate the constitutional right to free speech (*see Lloyd Corp. v Tanner*, 407 US 551, 569-570 [1972]; *SHAD Alliance v Smith Haven Mall*, 66 NY2d at 502; *Kings Mall, LLC v Wenk*, 42 AD3d 623, 624 [2007]). Stated another way, "while the drafters of the 1821 free speech clause may not have envisioned shopping malls, there can be no question that they intended the State Constitution to govern the rights of citizens with respect to their government and not the rights of private individuals against private individuals" (*SHAD Alliance v Smith Haven Mall*, 66 NY2d at 503). Thus, a person asserting a constitutional violation arising from a restriction on speech that occurred on private property must show that the state was significantly involved and "[t]he factors to be considered in determining whether [state action] has been shown include: the source of authority for the private action; whether the [s]tate is so entwined with the regulation of the private conduct as to constitute [s]tate activity; whether there is meaningful [s]tate participation in the activity; and whether there has been a delegation of what has traditionally been a [s]tate function to a private person" (*id.* at 505 [internal quotation marks and citations omitted]).

Plaintiff points to several factors in this case that he contends reveal a joint enterprise of the mall and the Town. We are unpersuaded that those factors constitute the requisite significant state action. There is ample precedent establishing that the involvement of the Town police officer at the request of the mall to enforce the rights of the private property owner under these circumstances did not constitute state action (*see Moore v Suffolk County Police Dept.*, 151 Misc 2d 160, 162 [1991]; *see also People v Raab*, 163 Misc 2d 382, 387-388 [1994]; *Southwest Community Resources, Inc. v Simon Prop. Group, LP*, 108 F Supp 2d 1239, 1250-1251 [D NM 2000]; *see generally State v Viglielmo*, 105 Haw 197, 95 P3d 952 [2004]; *State v Wicklund*, 589 NW2d 793 [Minn 1999]). Similarly, the weight of authority does not support the proposition that the mall was transformed into a state actor by the presence on its premises of a police substation that did not have Town personnel assigned to it and was used for bookings and paperwork on an infrequent basis (*see United Food & Commercial Workers Union, Local 919, AFL-CIO v Crystal Mall Assoc., L.P.*, 270 Conn 261, 289, 852 A2d 659, 675 [2004]; *State v Wicklund*, 589 NW2d at 796, 802; *cf. Kings Mall, LLC v Wenk*, 42 AD3d at 625; *Southwest Community Resources, Inc. v Simon Prop. Group*, 108 F Supp 2d at 1251-1252; *but cf. Bock v Westminster Mall Co.*, 819 P2d 55 [Colo 1991]). Although the mall's special use permit required an annual payment for a period of years to offset additional law enforcement expense, such a regulatory requirement by a municipality does not constitute significant state action so as to make the regulated private entity a state actor (*see People v Raab*, 163 Misc 2d at 387; *cf. Jackson v Metropolitan Edison Co.*, 419 US 345, 351 [1974]; *Moghimzadeh v College of St. Rose*, 236 AD2d 681, 682 [1997], *appeal dismissed* 90 NY2d 844 [1997]). Plaintiff's assertion that the mall has created a public forum is not germane since "the characterization or the use of property is immaterial to the issue of whether [s]tate action has been shown" (*SHAD Alliance v Smith Haven Mall*, 66 NY2d at 506). While a small number of states have expanded traditional constitutional analysis—usually based on unique provisions of their constitutions—to include privately owned malls under circumstances analogous to this case (*see e.g. New Jersey Coalition Against War in the Middle E. v J.M.B. Realty Corp.*, 138 NJ 326, 650 A2d 757 [1994], *cert denied sub nom. Short Hills Assoc. v New Jersey Coalition Against War in the Middle E.*, 516 US 812 [1995]; *Robins v Pruneyard Shopping Ctr.*, 23 Cal 3d 899, 592 P2d 341 [1979], *affd* 447 US 74 [1980]), New York has interpreted its constitution regarding this issue in a manner essentially consistent with the federal courts and the majority of

state courts (*see SHAD Alliance v Smith Haven Mall*, 66 NY2d at 500-505; *see also State v Viglielmo*, 105 Haw at 208-210, 95 P3d at 963-965 [discussing the analysis used in various states]). We agree with Supreme Court that, under the analysis that controls in this state, plaintiff failed to establish significant state action.

Plaintiff further asserts that his arrest for trespass was a false arrest. Since plaintiff's arrest was warrantless, there was a presumption of unlawfulness making it incumbent upon defendants to establish that Myers had probable cause to believe plaintiff had committed a trespass at the time of his arrest (*see Broughton v State of New York*, 37 NY2d 451, 458 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]; *Stratton v City of Albany*, 204 AD2d 924, 924-925 [1994]). Probable cause to justly arrest does not require proof sufficient to warrant a conviction and can be supported by hearsay, if such hearsay is based upon the informant's knowledge and the information is reliable (*see People v Johnson*, 66 NY2d 398, 402-403 [1985]; *People v Miner*, 42 NY2d 937, 938 [1977]; *People v Horsman*, 152 AD2d 859, 860-861 [1989]; *People v Murphy*, 97 AD2d 873, 874 [1983], *lv denied* 61 NY2d 764 [1984]).

Here, Myers was informed by mall security officers that there had been various disturbances involving plaintiff, plaintiff's behavior was reportedly at least part of the cause of the disturbances, and plaintiff had been repeatedly asked by authorized mall personnel to either remove his T-shirt or leave the premises and he refused. Myers also observed a potential disturbance involving plaintiff and learned directly from plaintiff that, despite being asked by mall personnel to leave, he absolutely refused to leave the premises. This proof provided probable cause for the trespass arrest. Plaintiff's contention that the disturbances did not actually occur as described by the security officers does not require a different result. For purposes of probable cause, Myers could rely upon representations from the security officers (both of whom gave sworn statements) since they claimed to have actual knowledge of the information they were reporting and there was no apparent reason to doubt the reliability of that information (*see People v Johnson*, 66 NY2d at 402-403).

We find unavailing plaintiff's argument that *People v Leonard* (62 NY2d 404 [1984]) provides authority for his false arrest claim to proceed. In that case, which involved the exclusion of a person from state owned and operated property, the defendant's conviction was reversed because the People failed to establish beyond a reasonable doubt at trial that the particular exclusion order had a legitimate basis. However, "[p]robable cause does

not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been committed by the person arrested" (*People v Shulman,* 6 NY3d 1, 25 [2005], *cert denied* 547 US 1043 [2006] [internal quotation marks and citation omitted]). In light of all the facts and circumstances known to Myers at the time of the arrest, probable cause existed.

Mercure, J.P., Spain, Rose and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.